UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STEVEN GROHS,

                Plaintiff,

    v.

GARY M. LANIGAN, *et. al.*,

                Defendants.

Civil Action No.: 16-7083 (JXN) (JBC)

**OPINION**

**NEALS**, District Judge

    Plaintiff Steven Grohs ("Plaintiff") is civilly committed under the New Jersey Sexually Violent Predator Act at the Special Treatment Unit ("STU") at the Adult Diagnostic and Treatment Center in Avenel, New Jersey. Plaintiff is proceeding *pro se* with a civil rights complaint filed pursuant to 42 U.S.C. §1983.

    Presently before the Court is Defendants Gary M. Lanigan ("Lanigan"), Sherry Yates ("Yates"), Maj. Colm D. Foley ("Foley"), SCO Russell Lee ("Lee"), and Sgt. Abel Rivera's ("Rivera") (collectively, "Defendants") unopposed motion for summary judgment (ECF Nos. 88-89.) For the reasons below, Defendants' motion for summary judgment is **GRANTED**.

    **I.**    **FACTUAL BACKGROUND**[1]

    Plaintiff's civil rights action arises from two separate incidents that occurred in October 2015, and in June 2016, at the STU. The Complaint names Defendants Lanigan, the former Commissioner of the Department of Corrections ("DOC"); Yates, the former Administrator of the STU; Foley, Correctional Police Major and Search Coordinator at STU; Rivera, Correctional

---

[1] The Court addresses only the facts relevant to the Defendants at issue in the instant motion for summary judgment.

Police Sergeant; and Lee, Senior Correctional Police Officer. (Defendants' Statement of Material Facts ("DSOMF") ¶¶ 2, 3, 4, 5, ECF No. 88-3.)

### A. The October 16, 2015 Incident

Plaintiff alleges that on October 16, 2015, a Senior Correctional Police Officer left a food package outside of his cell during "lockin time." (DSOMF ¶ 6.) Plaintiff opened the package and realized it was something he did not order. (*Id.*) Plaintiff turned the package over to the staff. (*Id.*) STU officials discovered that the box contained contraband, and Plaintiff was subsequently placed in temporary close custody ("TCC") by Rivera and SCO Calton. (*Id.* ¶ 7.) TCC involved being removed from the general population and placed in a cell with minimal property. (*Id.* ¶ 8.) Plaintiff alleges that while in TCC, he was subject to a strip search in an area visible to other STU residents. (*Id.* ¶ 9.) Plaintiff also alleges that the TCC unit was oppressively hot, unsanitary, infested with bed bugs, and the toilet flooded. (*Id.* ¶ 11.) STU officials were aware of heating issues in the TCC cell and had attempted to have it fixed with at least a dozen maintenance orders from October 31, 2014, to May 1, 2015. (*Id.* ¶ 12.)

### B. The June 9, 2016 Incident

On June 9, 2016, STU officials discovered contraband in a bathroom. (*Id.* ¶ 16.) Following that discovery, STU officials conducted a mass search for contraband in the resident housing areas. (*Id.* ¶ 17.) Plaintiff alleges that during this mass search, he was once again subjected to a strip search during a "stand-up count." (*Id.* ¶ 18.) Plaintiff alleges that while on his knees with his hands on his head, he was shoved to the ground by officers when an unrelated incident occurred in the vicinity. (*Id.* ¶ 20.)

## II.  RELEVANT PROCEDURAL BACKGROUND

Plaintiff initiated this action on October 13, 2016. (ECF No. 1.) The Honorable Kevin McNulty, U.S.D.J. (ret) ("Judge McNulty"),[2] screened Plaintiff's Complaint pursuant to 28 U.S.C. 1915(e)(2)(B) and allowed Plaintiff to proceed on the following claims: (1) First Amendment retaliation claim against Yates (Count I); (2) Fourth Amendment unreasonable search and seizure claims against Yates, Foley, Rivera, and Lee (Count II); (3) Fourth Amendment unreasonable search and seizure claim against Lanigan, Foley, and John Doe (Count III); (4) Fourteenth Amendment excessive force claim against John Doe (Count IV); (5) Fourteenth Amendment conditions of confinement claim against Yates (Count VI); (6) supervisory liability claim against Lanigan[3], Yates, Foley, and Jane Doe (Court VIII); and (7) New Jersey invasion of privacy claim against Rivera and John Doe (Count IX). (*See* ECF No. 4 at 22.)

After the close of Discovery, Defendants moved for summary judgment. (ECF Nos. 88-89.) In their motion, Defendants argue that (1) Plaintiff's claims are barred by the April 17, 2017 Settlement Agreement entered by Plaintiff and the DOC in a separate action,[4] and (2) there is insufficient evidence to create a genuine issue on all of Plaintiff's claims. (*See generally* ECF No. 88-1.) Plaintiff filed a request for an extension of the deadline to oppose Defendants' motion for summary judgment. (ECF No. 91.) On December 28, 2024, the Court provided Plaintiff additional time until February 12, 2024, to file his opposition. (ECF No. 92.) Plaintiff failed to file an

---

[2] This matter was reassigned to the undersigned on June 28, 2021. (ECF No. 37.)

[3] Judge McNulty dismissed this claim against Lanigan as to the October 27, 2015 incident. (*See* ECF No. 4 at 15 n.5.)

[4] In 2017, Plaintiff was involved in several other lawsuits filed against the DOC and various state officials in the New Jersey District Court. (*Id.* ¶ 28.) To resolve these lawsuits, on April 17, 2017, Plaintiff entered into a settlement agreement with the DOC ("the 2017 Settlement Agreement"). (DSOMF ¶¶ 29-30; Ex. P at *1-5, ECF No. 89-7; *see also Steven Grohs, et al., v. Meg Yatauro, et al.*, No. 12-00905 (KM), ECF Nos. 113-14.) The 2017 Settlement Agreement provides that Plaintiff "release[s] and give[s] up any and all claims and rights" against the DOC and its employees. (Ex. P at *1.) The released claims included "all claims . . . which I am not aware and those not mentioned in this release. This release applies to all claims resulting from anything which has happened up to now." (*Id.*) Defendants assert that Lanigan, Yates, Rivera, Foley, and Lee were employees of the DOC when Plaintiff signed the 2017 Settlement Agreement. (*Id.* ¶ 33, Exs. B, C, D, E, and F, ECF Nos. 7-10.)

3

opposition to Defendants' motion by the extended deadline. Later, on March 5, 2024, Plaintiff filed another letter requesting a second extension of time to file his opposition. (ECF No. 95.) On March 13, 2024, the Court granted Plaintiff a second extension until Mary 13, 2024. (ECF No. 96.) Despite the same, Plaintiff failed to file an opposition. On May 23, 2024, the Court issued an Order, giving Plaintiff until June 7, 2024, to show cause why the Court should not proceed with Defendants' motion for summary judgment as unopposed. (*See* ECF No. 98.) Plaintiff failed to respond to the Court's Order to Show Cause. The Court will, therefore, proceed with the motion as unopposed.

### III. LEGAL STANDARDS

Summary judgment is appropriate when there "is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine "if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party[;]" and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citation omitted). The moving party bears the "initial responsibility" of demonstrating the "absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must [then] counter with specific facts which demonstrate that there exists a genuine issue for trial." *Orson, Inc. v. Miramax Film Corp.*, 79 F.3d 1358, 1366 (3d Cir. 1996) (citation omitted).

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence. . . ." *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (citation omitted). Rather, "[a]ll facts and inferences are construed in the light most favorable to the non-moving party." *Boyle v. Cnty. of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (citation omitted). Credibility determinations are the province of the factfinder. *Big*

*Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). Thus, the court's role is "to determine whether there is a genuine [dispute] for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

IV.     **ANALYSIS**

   **A. Plaintiff's Settlement Agreement**

Defendants submit that they are entitled to summary judgment because Plaintiff previously entered into the 2017 Settlement Agreement in which he agreed to release all claims against the DOC and its current and former employees that occurred prior to April 17, 2017. (ECF No. 88-1 at 8-12.) The Court agrees.

Ordinarily, contract principles govern the enforceability of a settlement agreement. *See W.B. v. Matula*, 67 F.3d 484, 497 (3d Cir. 1995), abrogated on other grounds, *A.W. v. Jersey City Pub. Sch.*, 486 F.3d 791 (3d Cir. 2007). However, the Court of Appeals for the Third Circuit has stated that "different rules govern [] review of cases in which a person allegedly waives civil rights claims." *W.B.*, 67 F.3d at 497 (*citing Cirillo v. Arco Chem. Co.*, 862 F.2d 448, 451 (3d Cir. 1988)). In such cases, the court should "inquire into the totality of the circumstances surrounding the execution of the agreement, and [the court] will decline to enforce the agreement unless its execution was knowing and voluntary." *Id.*, (*citing Cirillo*, 862 F.2d at 451); *see also Clark v. Vernon*, 228 F. App'x 128, 132 (3d Cir. 2007). The Third Circuit stated that:

> We consider such factors as whether (1) the language of the agreement was clear and specific; (2) the consideration given in exchange for the waiver exceeded the relief to which the signer was already entitled by law; (3) the signer was represented by counsel; (4) the signer received an adequate explanation of the document; (5) the signer had time to reflect upon it; and (6) the signer understood its nature and scope. We may also look to whether there is evidence of fraud or undue influence, or whether enforcement of the agreement would be against the public interest.

5

*Id.* (*citing Cirillo*, 862 F.2d at 451); *see also Allah v. Evanko*, Civ. No. 04-1197, 2010 WL 2698324 at *2-3 (W.D. Pa. July 7, 2010).

Here, Plaintiff was represented by counsel when he entered into the 2017 Settlement Agreement at issue. (*See Steven Grohs, et al., v. Meg Yatauro*, *et al.*, No. 12-00905 (KM), ECF Nos. 60, 61, 121, 122.) Plaintiff reviewed and signed the 2017 Settlement Agreement, indicating that he "carefully read the foregoing agreement and kn[ew] the contents thereof and sign[ed] that same as his[] own free act." (ECF No. 89-7 at *5.) Plaintiff also received monetary consideration for agreeing to release the DOC and its employees of liability. (*See id.* at 3.) Thus, the Court must consider the language of the agreement. The 2017 Settlement Agreement is entitled "SETTLEMENT AGREEMENT AND UNCONDITIONAL GENERAL RELEASE." (*Id.* at 2.) The title indicates that the release was unconditional, and the language of the release is broad. It reads as follows:

> 1. **Releasor and Releasees**: This SETTLEMENT AGREEMENT AND UNCONDITIONAL RELEASE (the "Release") dated as of 4/17/2017, is given by **Steven Grohs** ("Releasor" hereinafter referred to as "I" or "Me"). If more than one person signs the Release, "I" shall mean each person who signs this Release. Releasees are the **State of New Jersey Department of Corrections** including ALL of its divisions, agencies, officials, employees and agents, past and present, including, but not limited to **Commissioner Gary Lanigan, Meg Yataro, SCO Jackson, SCO D'Amico, Sherry Yates, SCO Geraldine Frattalone, and SCO William Datz** hereinafter referred to as "You."
>
> 2. **Release**: I release and give up any and ALL claims and rights which I may have against You. This releases ALL claims, demands, damages, causes of action, or suits which have been or could have been related to the events that gave rise to the Complaint. This releases ALL claims, including those of which I am not aware and those not mentioned in this release. This Release applies to ALL claims resulting from anything which has happened up to now, including but not limited to, ALL claims that were or could have been brought in the actions entitled **Carson v. Department of Corrections, et al, 16-05163; Grohs v. D'Amico, et al., 09-7870; Grohs v. Holmes, et al., 13-7879; and Grohs v. Yatauro, et al., 12-905** in the

6

District Court of New Jersey.[5] This Release includes ALL claims involving any continuing effects of actions or practices which arose prior to the date of this Release and I release the use in any way of any past action or practice in any subsequent claim.

(*Id.* at 2.)

The 2017 Settlement Agreement clearly released the DOC and all of its agents, past and present. (*Id.*) Plaintiff also released "ALL claims, including those of which I am not aware and those not mentioned" in the release. (*Id.*) Although the release explicitly names the above-listed four additional cases; it also clearly states that the release applied to "ALL claims resulting from anything which happened up to now, *including but not limited to*, ALL claims" that were brought in the four named actions. (*Id.*) (emphasis added).

In *Davis, Grohs v. Yates, et al.*, No. 15-6943 (KM), Plaintiff raised conditions of confinement claims of inadequate heat at the STU against Defendants Yates and Sarah Davis. The defendants in that matter moved for summary judgment, arguing that they were entitled to summary judgment because Plaintiff had entered into the same settlement agreement at issue in the instant action. (*See id.*, ECF No. 129.) Judge McNulty considered the language of the 2017 Settlement Agreement and found:

---

[5] The Court notes that this portion of the 2017 Settlement Agreement contains typographical errors regarding the correct docket numbers for the cases named.

*Carson v. Department of Corrections, et. al.*, 16-05163 (SDW), was a conditions-of-confinement claim involving inadequate laundry facilities at the STU in 2014.

*Grohs v. Holmes, et al.*, 13-7879 [incorrectly listed as 7870] (KM), involved claims of inadequate law-library and other facilities, and First Amendment retaliation.

*Grohs v. Yatauro, et al.*, 12-905 (KM) was a conditions-of-confinement claim involving inadequate hot water at the STU.

*Grohs v. D'Amico, et al.*, Civ. No. 09-5273 [incorrectly listed at 7870] (NLH), which asserted a variety of claims of harassment by guards in retaliation for filing grievances. The Court notes that in *Davis, Grohs v. Yates, et al.*, No. 15-6943 (KM), Judge McNulty found that the Settlement Agreement was referring to these corrected docketed cases. (*See Davis, Grohs v. Yates, et al.*, No. 15-6943 (KM), ECF No. 129 at 10, n.2.)

7

> The language could hardly be broader, or more clear. The defendants were buying peace with respect to Mr. Grohs, a very frequent litigant against them. There was consideration in the form of a modest cash payment.
>
> Under the circumstances, I must find that the plain language of the Agreement, in the surrounding circumstances, encompasses the claims asserted here. The settlement was signed as of April 17, 2017. The events sued upon in this action occurred in 2014–15, and surely fall within, e.g., the category of "ALL claims resulting from anything which has happened up to now." Indeed, these claims probably "could have been brought" in one or more of the prior actions which were specifically listed. The claims of Plaintiff Grohs in this action were therefore extinguished by that release.

(*Id.* at 10-11.) The Third Circuit affirmed Judge McNulty's grant of summary judgment in that matter. (*See* ECF No. 88-14 at 2-3.) The Third Circuit found that "considering the totality of the circumstances, where Grohs was represented by counsel in one related action and indicated that this agreement to the settlement was knowing and voluntary, enforcement of the agreement is appropriate." (*Id.* at 3.)

Similarly, the incidents alleged in the instant action occurred in 2015 and 2016. Plaintiff filed his complaint in October 2016, before Plaintiff signed the 2017 Settlement Agreement. Plaintiff has failed to oppose Defendants' motion for summary judgment and makes no argument as to why his instant conditions of confinement and unlawful search claims do not fall into the category of "ALL claims resulting from anything which has happened up to now" from the Settlement Agreement. Finally, Defendants are clearly agents of the DOC that were released in that agreement.

The Court finds that considering the totality of the circumstances, the language of the Settlement Agreement was unconditional and broad and released Defendants from liability for Plaintiff's instant civil rights claims. Therefore, Defendants are entitled to summary judgment as to Plaintiff's claims.

## V. CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (ECF No. 88) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED with prejudice**. An appropriate Order accompanies this Opinion.

**DATED**: November 21, 2024

HONORABLE JULIEN XAVIER NEALS
United States District Judge